HOKE, J., dissenting arguendo; CLARK, C. J., concurring in the dissenting opinion.
The plaintiff sued the defendant before a justice of the peace on the following due bill: *Page 142 
HENDERSON, N.C. 4 December, 1908.
Due R. B. Woodson $92.92 (ninety-two dollars 92-100) on a policy of life insurance applied for this day in the Equitable Life, said $92.92 to be paid when policy is delivered. J. W. BECK.
(145) The defendant admitted the execution of the due bill and a tender of the policy for $2,000, an ordinary life policy, but alleged that the contract between him and plaintiff was that the defendant could purchase the new policy and pay premiums on the same by the surrender of a $1,000 policy in the same company that would mature in April, 1909, and the payment of $9 per year, and that plaintiff refused to perform said contract, and defendant therefore denied all liability on the due bill. There was no allegation of fraud or mistake. The justice of the peace rendered judgment against defendant, from which he appealed to the Superior Court. At the trial in the Superior Court his Honor submitted the following issue:
"Is the defendant indebted to plaintiff, and, if so, in what amount?"
The jury, under instructions from his Honor, responded: "Yes, $92.92 and interest from 30 December, 1908." The defendant appealed.
The only question presented by this appeal is the correctness of his Honor's ruling, excluding the following testimony of the defendant: "Plaintiff offered to insure my life. I told him I wanted no insurance. He said, `You have an Equitable policy that I can trade you for to your advantage.' Asked to see it. I showed it. He saw it was payable to my wife. He said he'd write the company, and later said he had done so. My policy for $1,000 was a twenty-payment policy, on which I had paid nineteen payments. He proposed to get me a new policy for $2,000, and that my old policy would be accepted in payment of all premiums to be due on it, except $9 per year. In other words, the old $1,000 policy was to be exchanged for a new $2,000 policy and I was to pay $9 a year additional. I agreed to this, and was examined, signed the application and the due bill, which I understood was an order binding me to surrender the old policy. Nothing was ever said about my paying $92.92 per year for a new $2,000 policy. I never agreed to do so. Three weeks later, when he brought the policy for $2,000, which calls for $92.92 per year from me for life, he refused to accept the old policy, but said I must arrange the surrender of it to the company, and he demanded of me $92.92 and that I take the new policy. This I refused. *Page 143 
The policy he offered me is the same as now shown me, and the application I signed is, to the best of my knowledge, copied correctly in it." (146)
This testimony was excluded by his Honor, there being no allegation of fraud or mistake, because it contravenes the well-settled and elementary rule of evidence that it is not permissible to add to, vary or contradict the terms of a written agreement by a contemporaneous parol agreement, even where no statutory enactment requires the agreement to be in writing. The more recent cases in which this rule is discussed are Walker v. Cooper,150 N.C. 129; Basnight v. Jobbing Co., 148 N.C. 350; Walker v. Venters,148 N.C. 388; Medicine Co. v. Mizell, 148 N.C. 384; Cobb v. Clegg,137 N.C. 153; Evans v. Freeman, 142 N.C. 61. In these cases will be found cited the earlier cases. It is contended, however, by the defendant, that the evidence does not contravene this rule, but was admissible under the rulings of this Court in Typewriter Co. v. Hardware Co., 143 N.C. 97, andEvans v. Freeman, 142 N.C. 61, and the cases therein cited. The principle, reaffirmed in these cases, is that "where the contract does not fall within the statute of frauds the parties may put their agreement in writing or contract orally, or put some of the terms in writing and arrange others orally. In the latter case, although that which is written cannot be aided by parol evidence, yet the terms arranged orally may be proved by parol, in which case they supplement the writing, and the whole constitutes one entire contract." Clark on Contracts (2 Ed.), p. 85.
The limitations, however, upon the application of this principle, recognized in all the cases in which this principle has been applied, is that the oral collateral agreement, or that part of the agreement not reduced to writing, cannot be permitted to vary, add to or contradict the written agreement, "but, leaving it in full force, as it has been expressed by the parties in the writing, the other part of the contract is permitted to be shown in order to round it out and present it in its completeness, the same as if all of it had been committed to writing." Evans v. Freeman,supra.
The manifest purpose and effect of the evidence offered by the defendant is to show, by parol, a contract entirely variant from and inconsistent with the written agreement. The defendant denies that what the writing contains was, in fact, any part of his agreement with plaintiff, though admitting, by his admission of signature to it, its obligatory force in law. He says the sum of $92.92 was not mentioned at all; that he thought the due bill was an order for the surrender of the old policy; that the only agreement he made was to buy an ordinary life policy for $2,000, as was tendered him, and to pay for the entire contract, to run for his life, by surrendering his twenty-payment policy of $1,000 *Page 144 
(147) and by the payment of $9 per year. There is no part of the written contract that is not varied and contradicted by this parol agreement. For the contract contained in the writing the defendant proposed to substitute, by parol, an entirely different contract. In our opinion, the proposed testimony was not competent or admissible under the decision of this Court in any case. In Typewriter Co. v. HardwareCo., supra, the defendant proposed to prove as its defense to an action upon its written promise to pay for a typewriter that at the time the agent of defendant agreed to allow it a credit of $40 as commissions on four machines sold by him. The Court held the evidence admissible, because it did not conflict with the written part of the agreement.
In Evans v. Freeman, supra, the defendant offered to prove by parol, as his defense to his note sued upon, that it was agreed that it should be paid out of the proceeds of the sale of the patent right for which it was given. This Court held the evidence competent, as not in conflict with the written part of the agreement, holding "that it is competent to show by parol evidence a collateral agreement as to how an instrument for the payment of money should in fact be paid, though the instrument is necessarily in writing and the promise it contains is to pay so many dollars."
In Braswell v. Pope, 82 N.C. 57, the plaintiff was allowed to show, as a defense to the action upon his notes, that it was agreed by parol that the defendant was to accept, as payment of his notes, an assignment of a judgment secured by a mortgage on another. In Kerchner v.McRae, 80 N.C. 219, the parol agreement, held admissible, showed that plaintiff was to credit on defendant's note the value, $3,000, of certain cotton belonging to defendant in the hands of plaintiff for sale. Other cases will be found decided by this Court "in which the application of the same principle has been made to various combinations of facts, all tending, though, to the same general conclusion that such evidence is competent where it does not conflict with the written part of the agreement and tends to supply its complement or to prove some collateral agreement made at the same time." In all these cases, in which the application of this principle has been made, the parol agreement was limited in its effect to the particular obligation sued upon; but, in this, this is neither the effect nor the purport of the proposed evidence, nor would the defendant be content with such a limitation. He proposes to discharge, not only the due bill to the plaintiff, but to discharge the contract with the assurance society issuing the policy, by writing into that contract the parol agreement made with the plaintiff. The (148) parol evidence not only does not tend to supply the complement of the written agreement or tend to prove some collateral agreement made at the same time as a part of the written agreement and not *Page 145 
inconsistent with it, but to prove a contract entirely variant from and inconsistent with it. Writing the parol agreement into the written, no part of the written agreement would be left. We do not think this principle has ever been extended so far, and, mindful of the warning of this Court inMoffitt v. Maness, 102 N.C. 457, repeated in Cobb v. Clegg, 137 N.C. 153, we are unwilling further to relax the well-settled rules of evidence against the admissibility of parol testimony to contradict, vary or add to the terms of a written agreement. We do not intend by what we have said in this decision to preclude the defendant, if he shall be so advised, from bringing his action against the assurance society for a reformation of his contract of insurance upon proper allegation and proof of mistake. After a careful review of the decided cases, we are of the opinion that the evidence was inadmissible and his Honor committed no error in excluding it. The judgment is therefore
Affirmed.