## C. B. FINGER v. J. A. GOODE.

(Filed 5 May, 1915.)

**Deeds and Conveyances—Contracts—Interpretation—Intent—Timber—Right to Sell Reserved.**

> An express written agreement made between the owner of lands whereon timber is growing, and another, whereby the latter was to cut the timber, with certain provisions as to a division of profits, etc., containing the further provision that if the owner "shall sell and convey any and all of the lands herein mentioned and described this contract shall be null and void as to the part sold and conveyed," must be so construed as to effectuate the intention of the parties as gathered from the language employed, and admits only of the interpretation that the owner may at any time during the life of the contract sell off portions of the land, though after the other contracting party had begun to cut the timber.

APPEAL by plaintiff from *Adams, J.,* at February Term, 1915, of LINCOLN.

Civil action heard on case agreed.

On the hearing it was properly made to appear that plaintiff owned and operated a sawmill and defendant owned a body of land lying in Lincoln County, known as the Derr lands, composed of different and coterminous tracts and amounting to about 700 acres, and, in December, 1909, the two entered into a contract in terms as follows:

"This agreement made this 11 December, 1909, between J. A. Goode of the county of Lincoln, State of North Carolina, of the first part, and Calvin Finger of said county and State, of the second part, witnesseth: That the said J. A. Goode does this day contract and agree to let the said C. B. Finger saw with a sawmill and convert into lumber all the timber now standing on the said J. A. Goode lands known as the 'Derr Lands,' containing about 700 acres, adjoining the lands of M. A. Ewing, J. P. Mullen, and others.

"And it is further agreed that each of said parties shall pay one-half of all expense in chopping and hauling all logs to sawmill and delivering all lumber to market, and expense of collecting pay for same.

"And it is further agreed that the sawing of said timber into lumber shall be a rebuttal in full against the timber as it now stands.

"And it is further stipulated and agreed that each of the parties herein named shall receive one-half of all the proceeds derived from the sale of all said lumber. It is further agreed if the price of lumber should decline below $1 per hundred f. o. b. railroad, the sawing shall cease until the price shall again advance to $1 per hundred f. o. b. railroad: *Provided,* if the said J. A. Goode shall sell and convey any or all of the land herein mentioned and described, this contract shall at once become null and void as to the part sold and conveyed.

"It is further agreed that in case the said J. A. Goode shall sell the timber in a body, then and in that case the said C. B. Finger is to cut

and saw said timber at customary prices." Signed and sealed by the parties.

That plaintiff placed his mill on the said lands of defendant and began cutting the timber, and while there defendant sold 377 acres of the land to one J. Smith Campbell, and plaintiff was thereby prevented from cutting the timber on the 377 acres.

The case on appeal further states that it was agreed by the parties that if, upon a proper construction of the contract, defendant had a legal right to sell said 377 acres after plaintiff began to cut the timber, that plaintiff had no cause of action, and the court having intimated an opinion in favor of defendant on the proposition as submitted, in deference to such intimation plaintiff submitted to a nonsuit and appealed.

*C. E. Childs, C. A. Jones, S. B. Sparrow for plaintiff.*
*Ryburn & Hoey, D. Z. Newton, K. B. Nixon for defendant.*

HOKE, J. In the recent case of *Gilbert v. Shingle Co.,* 167 N. C., pp. 286-288, it is said to be the accepted rule of construction of written contracts: "That the intent of the parties as embodied in the entire instrument should prevail, and that each and every part shall be given effect if it can be done by fair and reasonable intendment, and that in ascertaining this intent resort should be had, primarily, to the language they have employed, and where this language expresses plainly, clearly, and distinctly the meaning of the parties, it must be given effect by the courts, and other means of interpretation are not permissible," citing *McCallum v. McCallum, post,* 310; *Kearney v. Vann,* 154 N. C., 311; *Hendricks v. Furniture Co.,* 156 N. C., 569; *Bridgers v. Ormond,* 153 N. C., 114; *Davis v. Frazier,* 150 N. C., 447; *Walker v. Venters,* 148 N. C., 388.

In the present case the contract contains express stipulation that "If the said J. A. Goode shall sell and convey any or all of the land herein mentioned and described, the contract shall at once become null and void," and there is nothing anywhere in the instrument to indicate that the force and effect of this provision shall be restricted to the period of time that might elapse before operations were commenced; indeed, there is nothing to indicate that there was to be any such period. The plain and natural meaning of the language is that the stipulation is to prevail through the life of the contract, and, applying the principle of interpretation above referred to, we concur in his Honor's view that, on sale of the land or any part of it, the contract obligations of the parties, concerning the portion sold, should cease.

There is no error, and the judgment of the Court below is
Affirmed.