ACME MANUFACTURING COMPANY v. MARTIN J. McCORMICK.

(Filed 3 April, 1918.)

1. **Contracts—Statute of Frauds—Parol Agreement—Contemporaneous—Bills and Notes.**

    A parol contemporaneous agreement that a promissory note was not to be paid at its stated due date is contradictory of the written instrument and is incompetent evidence.

2. **Contracts—Statute of Frauds—Parol Agreement—Subsequent—Bills and Notes—Maturity—Notice.**

    The rule excluding parol evidence contradictory of a written instrument does not apply to an agreement thereafter made upon a sufficient consideration, and evidence thereof is admissible as between the original parties to a promissory note, or its endorsee taking after maturity.

3. **Contracts—Statute of Frauds—Parol Agreement—New Promise—Consideration—Insurance, Life.**

    An agreement subsequently made by the maker of a promissory note and the payee that the latter take out at his own expense insurance on the maker's life requires the consent of the maker, and is a sufficient consideration for the new promise, being an act which he was not required to do and conferring a substantial benefit on the payee.

APPEAL by defendant from *Connor, J.,* at February Term, 1918, of ROBESON.

This is an action on a note executed by the defendant to John W. Ward for $2,500, dated 19 April, 1915, and payable 15 October, 1915.

The defendant admitted that the plaintiff was the equitable owner of the note, but denied that it was transferred to the plaintiff before maturity.

The defendant alleged in his answer as a defense:

1. That it was agreed between the defendant and the said Ward, at the time of the execution of the note, that he, the said Ward, would hold the note and accept the interest on the same annually until the defendant could pay the whole of the note.

2. That after the execution of the note the said Ward agreed with the defendant that if he would allow the said Ward to take out insurance on his life in the sum of $5,000, payable to the said Ward, as security for the said note, that he, the said Ward, would pay the premiums on the policy and hold the same to secure the payment of the said note in the event of the death of the defendant, and that in consideration of the defendant allowing the said Ward to take out said insurance on his life that he would hold the note and accept the interest on the same each year until the defendant could pay the same.

The plaintiff moved for judgment upon the pleadings upon the ground that the answer admitted the execution of the note and that the plaintiff was the equitable owner thereof, and that the answer did not set up a defense available to the defendant.

The motion of the plaintiff was allowed, judgment was rendered accordingly, and the defendant excepted and appealed.

*MacLean, Varser & MacLean and McIntyre, Lawrence & Proctor for plaintiff.*

*W. E. Lynch and T. A. McNeill, Jr., for defendant.*

ALLEN, J. The first defense relied on, that there was a contemporaneous agreement that the defendant would not be required to pay the note according to its terms and that the time to pay the principal would be extended upon the payment of interest, cannot be allowed because in direct contradiction of the written promise to pay.

In *Hilliard v. Newberry,* 153 N. C., 109, defendant relied upon an alleged oral contemporaneous agreement extending the time of payment beyond that shown by the face of the note sued on, and the Court said:

"As heretofore stated, the obligation sued upon, in addition, contains a positive promise to pay a definite sum at a specified time, and entitled the plaintiff to judgment according to the tenor of the bond. The claim that there was a cotemporaneous oral agreement to the effect that the time could be further extended is in direct contradiction of the written stipulation of the agreement and under several recent decisions of the Court such a position was not open to defendant. *Woodson v. Beck,*

151 N. C., 145; *Walker v. Cooper,* 150 N. C., 129; *Walker v. Venters,* 148 N. C., 388; *Mudge v. Varner,* 146 N. C., 147; *Bank v. Moore,* 138 N. C., 529." And in *Bank v. Moore,* 138 N. C., 532:

"The only defense attempted amounts in substance to this: That although the defendant executed his note and received a valuable consideration for same, there was an understanding and agreement at the time that payment should never be enforced or demanded. All the authorities are agreed that such a defense is not open to defendant."

See, also, to the same effect, *Rousseau v. Call,* 139 N. C., 177, and *Boushall v. Stronach,* 172 N. C., 274.

These authorities are not in conflict with *Evans v. Freeman,* 142 N. C., 61, and *Kernodle v. Williams,* 153 N. C., 475, which permit the proof of a cotemporaneous agreement as to the mode of payment, or with many other cases in our Reports in which the cotemporaneous agreement did not contradict the writing.

This rule, excluding evidence of a parol agreement, has no application to an agreement made after the execution of the writing, changing, or modifying the written agreement (*Brown v. Mitchell,* 168 N. C., 313), and the subsequent agreement to extend the time of the payment of the principal upon the payment of the interest upon the debt, in consideration of the defendant giving his consent for the payee to take out insurance on his life as security for the debt, is therefore a defense if based on a valuable consideration.

The question of what constitutes a valuable consideration was considered in *Institute v. Mebane,* 165 N. C., 644, where the Court says: "In 9 Cyc., 312, the author cites many authorities to support the position that 'There is a consideration if the promisee, in return for the promise, does anything legal which he is not bound to do, or refrains from doing anything which he has the right to do, whether there is any actual loss or detriment to him, or actual benefit to the promisor or not.' . . .

"The Exchequer Chamber, in 1875, defined consideration as follows: 'A valuable consideration in the sense of the law may consist either in some right, interest, or benefit accruing to the one party, or some forbearance, detriment, loss, or responsibility given, suffered, or undertaken by the other.' Courts 'will not ask whether the thing which forms the consideration does in fact benefit the promisee or a third party, or is of any substantial value to any one. It is enough that something is promised, done, forborne, or suffered by the party to whom the promise is made, as consideration for the promise made to him.' Anson on Contracts, 63. 'In general, a waiver of any legal right at the request of another party is a sufficient consideration for a promise.' Parsons on Contracts, 444. 'Any damage, or suspension, or forbearance of a right will be sufficient to sustain a promise.' 2 Kent's Com. (12 Ed.), 465."

If the consent of the defendant was necessary to the issuing of the policy of insurance, the agreement alleged in the answer comes within the principle laid down, as he has done an act which he was not required to do and has also conferred a substantial benefit on the creditor, the payee in the note.

Was the consent of the defendant necessary to a valid policy of insurance?

The question has not been presented in this Court before this, and it will be of rare occurrence because usually the insured must submit to a physical examination, but the authorities generally agree that the consent of the insured is necessary.

"It is held to be contrary to public policy to insure the life of a person who has not consented to the issuance of a policy." 14 Mod. Am. Law, 145. "Except perhaps in the case of an infant, it is a general rule that a policy of life insurance taken out without the knowledge or consent of the insured person is unenforceable, though it is frequently the case that such a policy is enforced, no question being raised." 14 R. C. Law, 889.

"It is against public policy to allow one person to have insurance on the life of another without the knowledge of the latter. Indeed, it is sometimes made a felony to take out insurance on the life of another without his knowledge." 25 Cyc., 732.

See, also, to the same effect, Vance on Insurance, 145; *Rombach v. Piedmont Ins. Co.,* 35 La. Ann., 233.

The principle has been adopted to prevent speculation in human life, the consent of the insured being regarded as a safeguard against excessive insurance on the life of the debtor, which might cause the creditor to be more interested in his death than in the continuance of his life.

We therefore conclude that there was error in rendering judgment upon the pleadings in favor of the plaintiff.

Reversed.