ACME MANUFACTURING COMPANY v. TUCKER & NOBLES AND DIRECTOR GENERAL OF RAILROADS.

(Filed 12 April, 1922.)

**1. Carriers of Goods—Railroads—Failure to Deliver—Burden of Proof—Nondelivery Station.**

Where a shipment of goods is delivered to a railroad company for transportation, the title vests in the consignee, with the duty resting upon the carrier on the arrival of the goods at destination to notify the consignee and make delivery or show legal excuse for its default. C. S., 3516. And this principle applies to a side-station when notification of arrival should have been given from a nearby station, and the inquiring consignee was there misinformed as to the arrival, and the car in the meanwhile was broken into and the shipment stolen.

**2. Same—Verdict—Judgments.**

Where it is established by the jury that a consignment of goods was carried to the delivering point by the carrier, its failure to deliver to the consignee, or to notify him, and the goods are lost while in its possession, the verdict is incomplete when there was no issue submitted as to whether the carrier, who is a party to the action, was in default in not delivering it to the consignee, and a judgment thereon against the consignee is reversible error, entitling the consignee to a new trial.

**3. Judgments—Statutes—Carriers of Goods—Railroads—Actions—Consignor and Consignee—Director General—Parties.**

Where the consignor brings action against the consignee for the purchase price of a shipment by common carrier, while the railroad was under control of the Federal Director, and the defense is that it had not

been delivered, it was proper to make the Director General a party to the action; and in case the shipment had been lost through the carrier's default, a judgment against the carrier is the proper one. C. S., 602.

STACY, J., dissenting.

APPEAL by plaintiff from *Kerr, J.,* at March Term, 1921, of NEW HANOVER.

This action was brought to recover the value of a carload of fertilizer shipped by plaintiff from Acme, N. C., on the Atlantic Coast Line Railroad to defendants Tucker & Nobles, at Munford Siding—a blind siding—or nonagency station of the Atlantic Coast Line Railroad, two miles north of Greenville, N. C., and operated under the control of the Atlantic Coast Line Railroad agency at Greenville.

There is uncontradicted evidence that this carload of fertilizer came to Greenville and was forwarded thence to Munford Siding, but that it was never received by Tucker & Nobles, some one having opened the car and removed the contents, and that there has been a trial therefor before the Federal Court at Wilson. On motion of the defendants, Tucker & Nobles, the Atlantic Coast Line Railroad Company and the Director General of Railroads were made party defendants, and the railroad company answered, placing responsibility, if any, upon the Director General, who through the same counsel as the railroad company admitted the receipt of Soo Line Car No. 36,986, in which this carload of fertilizer was transported, but denied any liability for failure to deliver the same.

The plaintiff admitted that by inadvertence they notified Tucker & Nobles that the fertilizer had been shipped in "Soo Line Car No. 30,986," whereas in truth it was shipped in "Soo Line Car No. 36,986." There was much evidence on the trial in regard to this inadvertence and mistake in the notice sent by the plaintiff to Tucker & Nobles.

The jury responded to the issues submitted that the plaintiff shipped over the Atlantic Coast Line Railroad the 30 tons of fertilizer in Soo Car No. 36,986, consigned to Tucker & Nobles at Munford Siding, but that the defendants Tucker & Nobles never received said fertilizer, and that the value of the same was $1,707. The evidence was uncontradicted that the consignees, Tucker & Nobles, inquired of the railroad agent at Greenville frequently if a carload of fertilizer had been shipped to them at that point, and the agent replied that it had not been received there, and there was evidence that the carload was later placed at Munford Siding, but that no notice was given to the consignee by the carrier or its agent at Greenville, and the agent himself so testified, although it was the habit of the carrier to give such at that siding; that the car

was broken open by parties unknown, and the contents were never delivered to Tucker & Nobles. Judgment was entered against the plaintiff, who appealed.

*J. G. McCormick and J. Bayard Clark for plaintiffs.*
*F. G. James & Sons and Wright & Stevens for defendants.*
*Rountree & Carr for Atlantic Coast Line Railroad Company and Director General.*

CLARK, C. J. It being admitted by all parties to this action that, according to the way-bill, the bill of lading, and the wheel report, as well as a matter of fact, the carload of fertilizer in question was loaded into and transported over the Atlantic Coast Line Railroad in Soo Car No. 36,986, the title at once passed, when it was so loaded, to the defendants Tucker & Nobles, the consignees, and the burden then devolved upon the carrier represented by the Director General to show a delivery thereof to Tucker & Nobles, or that failure to deliver the same was not by default of the carrier. The verdict of the jury determined that the said carload, which had been transported in Soo Car No. 36,986, consigned to Tucker & Nobles at Munford Siding, was delivered by the railroad at said siding, but that said carload was never delivered to Tucker & Nobles, and that the value thereof was $1,707.

The other finding, as to the plaintiff having erroneously notified Tucker & Nobles that the shipment had been made in Soo Car No. 30,986, seems to have been much debated at the trial, and the issue as to that matter established the fact of this inadvertency, but we cannot see that it was very relevant or at all material.

In *Mitchell v. R. R., ante,* 162, it was held by *Hoke, J.,* that under Revisal, 2632, as amended by chapter 461, Laws 1907, which, as amended, is now C. S., 3516, it is incumbent upon the common carrier of freight not only to ship the goods promptly, but it is negligence on the part of the carrier not to make delivery at destination within the time limited by the statute, which is not complied with "until the goods are in the company's warehouse (or at destination) and notice duly given." The railroad agent at Greenville testified that no notice of the arrival of the shipment was given to Tucker & Nobles, and the testimony that they frequently inquired for it is uncontradicted.

The carrier having received this shipment, consigned to Tucker & Nobles at Munford Siding, the title thereupon to the goods passed to the consignees, and the duty devolved upon the carrier to notify the consignees upon the arrival of the shipment and to make delivery. *Poythress v. R. R.,* 148 N. C., 390; *Bank v. R. R.,* 153 N. C., 351.

20—183

Mfg. Co. *v.* Tucker.

It was eminently proper, and indeed essential, to the disposition of the questions involved that the Director General should be made a party defendant.

The trial was incomplete, because the issues submitted did not decide the material matters necessary for a final judgment to determine the ultimate rights of the parties on each side as between themselves. Issues 1 and 3 were as to whether the plaintiff notified the consignees correctly as to the number of car, and number 4, whether the plaintiff corrected this error. In response to issue number 2, the jury found that the plaintiff shipped over the Atlantic Coast Line Railroad this 30 tons of fertilizer, consigned to Tucker & Nobles at Munford Siding, and that it was delivered by the railroad at said siding. In response to issue 5, the jury found that the defendants Tucker & Nobles did not receive the car of fertilizer shipped by the plaintiff to them; and in response to issue number 6 the jury found that the value of the said carload of fertilizer was $1,707.

The matters found on 2, 5, and 6 issues were not controverted by any evidence, and, in fact, were admitted by all parties. The real issue was as to whether the failure of the carrier to deliver was without default on its part. The case should go back for this additional finding of fact, and if found against the Director General, judgment should be entered in favor of the plaintiff and against the Director General. It would be superfluous to render judgment in favor of the plaintiff against the consignees with judgment over against the Director General.

In the language of the statute, C. S., 602, the judgment should "determine the ultimate rights of the parties on each side as between themselves"; and as held in *Corp. Com. v. R. R.,* 137 N. C., 1: "Judgment should be entered on the material issues without regard to the immaterial issues."

The evidence in this case upon the record shows no default on the part of the consignees, and no excuse for the failure of the carrier to notify the consignees and to deliver the shipment to them, but they should have opportunity now to produce such evidence, and the verdict should distinctly adjust the responsibility for the failure to deliver the goods.

New trial.

Stacy, J., dissents.